UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 1:15-cr-00046-NONE |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| LANCE AARON WILSON, et al., | |
| Defendant. | (Doc. No. 242) |

Pending before the court is defendant Lance Aaron Wilson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the purported risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 242 at 2.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On February 19, 2015, defendant was indicted by the federal grand jury for this district on charges of conspiracy to distribute oxycodone and hydrocodone in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 841(b)(1)(C) (Count One) and possession with the intent to distribute oxycodone and hydrocodone and aiding abetting the same in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. (Doc. No. 1.) On November 21, 2016, defendant entered a plea

of guilty to the oxycodone and hydrocodone distribution conspiracy charged in Count One. (Doc. Nos. 94, 95.) The conspiracy in which defendant Wilson and his co-defendants engaged involved the theft of blank prescription pads from a pain management facility located in the Central Valley (where one of the co-defendants worked), falsely filling out prescriptions for oxycodone, hydrocodone, and Xanax using fictitious names at a local pharmacy (where another co-defendant worked), and then defendant Wilson and others selling the prescription drugs obtained in this manner on the street for between $13 and $15 a pill. That conspiracy spanned the period from December 1, 2013 through no later than January 13, 2015. (Doc. No. 1 at 2-3.)

Following defendant Wilson's entry of his guilty plea, a presentence report was prepared by the U.S. Probation Office. (Doc. No. 107 (Presentence Report).) In that report it was determined that under the U.S. Sentencing Guidelines defendant's adjusted offense level was 25 and his criminal history placed him in category III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 70 to 87 months. (Doc. No. 107 at 29.) The U.S. Probation Office recommended that defendant Wilson be sentenced to a below guideline term of 48 months imprisonment based upon consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a) as noted in the report. (*Id.* at 26–30.) On March 19, 2018, the sentencing judge imposed an above guideline term of imprisonment of 96 months with a 48 month term of supervised release to follow.[1] (Doc. No. 143 at 2.)

Defendant Wilson is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Terminal Island Federal Correctional Institute in San Pedro, California ("FCI Terminal Island"). (Doc. No. 242 at 9.) On May 5, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 242.) On May 21, 2020, the government filed its opposition to the motion, and on May 27, 2020, defendant filed his reply thereto. (Doc. Nos. 246, 249.) Defendant, through his counsel, thereafter submitted four additional filings in support of his motion. (Doc. Nos. 250, 255, 260, 261.) Although represented by counsel, defendant also submitted his own hand-written, unauthorized, motion which includes

---

[1] The reasons for the sentencing judge's imposition of an above guidelines sentence in defendant Wilson's case will be discussed in detail below.

a declaration and various BOP records relating to the defendant including his medical records, and an article that appeared in the Los Angeles Times, titled "Inmate labeled as 'recovered' from coronavirus dies at Terminal Island." (Doc. No. 259.) The government then filed a response to defendant's filings, attaching additional BOP medical records thereto. (Doc. Nos. 263, 265.) Finally, defense counsel submitted a declaration updating the court on defendant's condition at FCI Terminal Island. (Doc. No. 266.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also*

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

*United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by

/////

>the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A. Administrative Exhaustion

On or about April 27, 2020, defendant submitted a request to the Warden at FCI Terminal Island seeking compassionate release—but he had not yet received a response to that request when he filed his motion in this court on May 5, 2020. (Doc. Nos. 242 at 19; 242-1.) The government contends that defendant failed to wait 30 days after sending his request to the Warden before filing the pending motion and that the court should dismiss the pending motion as premature or stay consideration of the motion until the BOP has completed administrative review of the request. (Doc. No. 246 at 20-22.) Defendant counters that and further administrative exhaustion should be excused as futile because of the risk posed by COVID-19 to inmates at FCI Terminal Island. (Doc. Nos. 242 at 19–22; 249 at 7–9.)

Due to the COVID-19 pandemic, district courts across the country have been presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for defendants seeking to bring compassionate release motions in federal court can be excused. Some courts have found that it can be, *see, e.g.*, *United States v. Connell*, ___ F. Supp. 3d ___, 2020 WL 2315858 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900 (E.D. Cal. Apr. 15, 2020). For purposes of resolving the pending motion, however, this court need not resolve this issue.[5] As

---

[5] The government's opposition to the motion was filed with this court on May 21, 2020. (Doc. No. 246.) Since then, no evidence has been presented indicating that the Warden at FCI Terminal Island has responded to defendant's request for compassionate release. If that is in fact the case, it would appear that defendant has, at least by now, exhausted his administrative remedies.

explained in detail below, the court concludes that defendant Wilson has failed to establish extraordinary and compelling reasons warranting his compassionate release. Moreover, even if the pending motion did establish such extraordinary and compelling reasons, the court further finds that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

7

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[6] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Wilson argues that extraordinary and compelling reasons warranting his compassionate release exist because he is "suffering from a serious physical . . . condition . . . that substantially diminishes [his] ability . . . to provide self-care" in FCI Terminal Island and "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Specifically, defendant argues that he was recently diagnosed with hypertension, he has been an asthmatic for much of his life, and he also suffers from high cholesterol. (Doc. No. 242 at 17.) The court notes that, at the time of his sentencing, none of these medical conditions were raised by defendant; rather, the only medical issues that were reported at that time were defendant's consistent migraine headaches and occasional backpain. (*See* Doc. No. 107 (Presentence Report) at 22.)

---

[6] Because defendant Wilson is only 35 years of age, these age and age-related factors are irrelevant to the court's disposition of the pending motion.

However, defendant's BOP medical records, generated in August 2020, do indicate that defendant also suffers from essential (primary) hypertension, an acute upper respiratory infection, and asthma. (Doc. Nos. 259 at 6.) The BOP medical records also suggest defendant has high cholesterol. (*Id.* (noting defendant is "+ FH," which the court understands as referring to "familial hypercholesterolemia," a genetic condition causing high cholesterol); *see also* Doc. No. 254 (sealed: BOP medical records dating further back submitted by the government).) Below, the court will address the evidence before it with respect to each of the conditions upon which defendant Wilson bases his claim of extraordinary and compelling reasons warranting his compassionate release.

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant "might be at an increased risk for severe illness from COVID-19" because of his hypertension. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 25, 2020) (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). However, the CDC does not recognize high cholesterol as an at-risk category and, in his reply brief, defendant appears to abandon any argument to the contrary. *Id.* (*See* Doc. No. 249 at 14–15.) According to the CDC, "[i]f untreated, people with [familial hypercholesterolemia] are up to 22 times more likely to have coronary heart disease," which if that came to pass would in turn increase the risk for contracting a severe illness from COVID-19. *See Familial Hypercholesterolemia*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/genomics/disease/fh/FH.htm (last visited Sept. 25, 2020). Nonetheless, there is no evidence before the court that defendant's high cholesterol has actually advanced to the point where he is suffering from a serious heart disease. Next, the CDC only recognizes "moderate-to-severe asthma" as an at-risk category for severe illness among those who contract COVID-19. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-

risk.html (last visited Sept. 25, 2020). Here, defendant Wilson has failed to present any medical evidence indicating that he suffers from even moderate asthma. In July 2020, defendant was diagnosed with asthma by BOP medical staff, but there is no suggestion that the diagnosis was for a moderate condition as opposed to a mild one. (*See* Doc. No. 259 at 6.) While defendant was classified as "care level two" by the BOP in August 2020, there is, again, no indication that this designation was related to a moderate asthma condition, as defendant asserts in his declaration. (*See id.* at 2, 5.) In fact, BOP did not cite any medical condition in designating defendant as "care level two." (*See passim id.* at 5.) Moreover, the presentence report in defendant's case does not document that he suffered from a moderate asthma condition. (*See passim* Doc. No. 107 (Presentence Report) at 22.)[7] Even if defendant could establish that he suffers from moderate asthma—which he has not—that condition merely "might" place him at an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 25, 2020). Finally, the court is simply unable to determine based on the present showing whether defendant's acute upper respiratory infection, which was diagnosed on July 31, 2020, places him at greater risk of suffering severe illness from COVID-19. *See passim id.* (Doc. No. 259 at 6–7.)

In the end, the evidence presented by defendant Wilson in support of his contention that he is at risk of becoming severely ill were he to contract COVID-19, is speculative. The court

---

[7] The only other "evidence" supporting defendant's alleged moderate asthma diagnosis comes from non-medical sources. The first support is from declarations submitted by defendant's sibling and father. (*See* Doc. Nos. 242-2 ¶ 23 (declaration of Jacque Wilson); 242-3 ¶ 7 (declaration of Mack Wilson).) Despite the statement in his motion for compassionate release that defendant "required hospitalization" for his asthma as a child, (Doc. No. 242 at 17), the court cannot locate any medical evidence before it that supports that contention and the other evidence presented lacks specificity (*see* Doc. No. 242-3 ¶ 7 (stating more than one child had asthma and referring to hospital visits with "the children" but not defendant Wilson specifically).) Second, defendant has submitted his own hand-written letter addressed, not to this court, but to his older brother in which he claims that during his imprisonment he was having trouble breathing and as a result was given a chest x-ray and an inhaler. (Doc. No. 255 at 5.) However, nothing in the BOP medical records appears to confirm these claims.

notes that defendant has already tested positive for the virus and yet appears to have recovered satisfactorily despite those unfortunate circumstances. (Doc. Nos. 254 at 3, 6 (BOP medical records indicating defendant tested positive for COVID-19 on approximately April 28, 2020, denied suffering from all major COVID-19 symptoms, and was listed as an "asymptomatic person in quarantine"); *see* 249 at 15–16 (defendant's reply brief noting that he has a "mild version of the illness" but also contending that he "may have been lucky this time").) Nonetheless, defendant argues that the possibility of re-infection from COVID-19 favors his compassionate release. (*See* Doc. No. 249 at 15 ("The CDC concurs" that "there is 'currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection.'").) In this regard, many courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin*, Case No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of infection, given the high numbers of infected inmates and

/////
/////
/////
/////
/////
/////
/////

11

Defendant's own contraction of the virus.").[8]  Other courts have taken the position that uncertainty surrounding the danger of re-infection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling" reasons for compassionate release exist. *See United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Out of an abundance of caution, the court concludes that because of his hypertension and the risk of re-infection from COVID-19, defendant Wilson is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Even so, the remaining question then is whether defendant's medical condition "substantially diminishes [his] ability . . . to provide self-care" in FCI Terminal Island.  *See id.*

The answer to this question is no—defendant Wilson has not satisfied his burden of establishing that such is the case.  Defendant is currently 35 years old and appears to be in, for the most part, adequate physical condition.  (*See* Doc. No. 107 (Presentence Report) at 3, 99.)  Defendant's hypertension appears to be currently well managed by BOP.  (*See* Doc. No. 254 at 6, 9 (BOP medical records stating defendant's essential (primary) hypertension is "now controlled with" the drug Lisinopril).)  As this court has stated, "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020).  Moreover, because

---

[8] Defendant has also submitted to this court an article that appeared in the Los Angeles Times, dated May 28, 2020, explaining that FCI Terminal Island classified an inmate as "recovered" who later died. (*See* Doc. No. 259 at 9–13.)  While that newspaper article does not provide significant detail with respect to the inmate in question, or the nature of his medical conditions and care, the BOP's official press release regarding that inmate's death cited multiple "long-term, pre-existing medical conditions, which the CDC lists at risk factors[.]"  Fed. Bureau of Prisons, Office of Pub. Affairs, *Inmate Death at the FCI Terminal Island* (May 27, 2020), https://www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf.  That inmate also passed away 14 days after being designated as "recovered."  *Id.*  In contrast, here, defendant Wilson only suffers from one identifiable medical condition that "might" place him at greater risk of severe illness from COVID-19, i.e., his hypertension.  Further, defendant tested positive for the virus approximately five months ago and there is no indication that he suffered from a significant or rapid decline in his health since then.  (*See* Doc. No. 259 at 7.)  Still, defendant's argument that FCI Terminal Island's process for classifying those infected with the virus as "recovered" is far from trustworthy, is quite well-taken even if it may be in keeping with CDC guidelines at any given time.

defendant has failed to establish that he suffers from at least moderate asthma, the court need not decide whether he is unable to provide "self-care" with respect to that medical condition.[9]

It is true that FCI Terminal Island experienced a significant COVID-19 outbreak, with that prison reporting 606 inmates and 23 staff testing positive but subsequently having recovered, while 10 inmates there have died at the hands of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 25, 2020).[10] Currently, the BOP is reporting that no inmates and only two staff at FCI Terminal Island have tested positive and are suffering from active cases of COVID-19. *Id.*[11] Because it appears that current active cases of the virus among prisoners at Terminal Island have been reduced to zero, adding COVID-19 to the equation thus does not tip the scales in favor of defendant's compassionate release. He previously contracted the virus and, except for some alleged breathing issues which appear to have been properly treated by medical staff (*see* Doc. No. 255 at 5), defendant appears to have been, in his words, "lucky" for the most part, (Doc. No. 249 at 16.) While there is still some unknown risk to defendant due to the possibility that he could re-contract COVID-19, that speculative possibility provides no basis upon which the court could conclude that defendant is "substantially diminishe[d]" in his ability to "provide self-care" at FCI Terminal Island. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Thus, defendant Wilson has failed to carry his burden in this regard. *See, e.g.*, *Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to

/////

/////

/////

---

[9] Even if defendant had established that he suffers from moderate asthma, he has failed to establish that the condition, even when considered in combination with his hypertension and the risk of his re-infection with COVID-19, demonstrates that his ability to provide self-care at FCI Terminal Island has been substantially diminished.

[10] FCI Terminal Island has a population of 880 inmates. *FCI Terminal Island*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/trm/ (last visited Sept. 25, 2020).

[11] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

put forward evidence that establishes an entitlement to a sentence reduction.").[12]

For the reasons explained above, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

### C. Consistency With the § 3553(a) Factors

Even if defendant Wilson's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, and although it is an arguably closer call, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[13] *See Parker*, 2020 WL 2572525, at *11.

Despite being given multiple opportunities to demonstrate his commitment to his own rehabilitation, defendant instead chose to repeatedly violate the court's trust. After he was indicted, on February 27, 2015, defendant Wilson was released on conditions with supervision by Pretrial Services. (Doc. Nos. 33; 107 (Presentence Report) at 5.) While on pre-trial release, defendant violated the conditions of his release several times and three separate violation petitions

---

[12] In one of the defendant's supplemental filings, his counsel has submitted a report prepared by Dr. Michael Rowe regarding the conditions of confinement at FCI Terminal Island during July and August of 2020. (Doc. No. 261, Ex. A, at 7.) The report highlights "the shortfalls of the procedures implemented by [FCI Terminal Island] and highlights major areas of concern[.]" (*Id.* at 3.) However, to the extent that defendant Wilson seeks to challenge the conditions of his confinement under the Eighth Amendment, a motion for compassionate release is not the proper vehicle to do so. Indeed, it appears the above-mentioned report was prepared for a class action civil rights lawsuit filed against federal prison officials alleging violations of the Eighth Amendment—a case in which defendant Wilson is the lead-named plaintiff. *See* Complaint (Doc. No. 1), *Wilson, et al. v. Ponce, et al.*, No. 2:20-cv-04451 (C.D. Cal. May 16, 2020).

[13] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

were filed with the court. (Doc. Nos. 44, 63, 112; *see also* Doc. No. 107 (Presentence Report) at 5.) Eventually, on August 11, 2017, defendant Wilson's pretrial release was revoked, and he was ordered detained as a person who was unlikely to abide by any conditions or combination of conditions of release. (Doc. No. 115.) Thus, it is clear that the defendant struggled, and eventually failed, under pretrial supervision.

As noted above, the advisory sentencing guideline range in defendant Wilson's case called for a term of imprisonment of between 70 and 87 months, with the U.S. Probation Office recommending a downward variance under 18 U.S.C. § 3553(a) to a 48-month sentence based upon noted mitigating circumstances. (Doc. No. 107 at 29–30.) At the sentencing hearing held on September 11, 2017, defendant urged the sentencing judge to provide him the opportunity to enter into a residential drug rehabilitation program in order to demonstrate his rehabilitation and potentially receive a sentence of less than the recommended 48-month sentence if he were successful. (Doc. Nos. 124; 178 (Sentencing Transcript) at 7.) The defendant elected to defer his sentencing at that hearing and agreed to attend Delancey Street Program, a rigorous drug rehabilitation center, even though the sentencing judge explicitly warned defendant he would be sentenced to a term of nearly 10 years in prison if he failed to successfully complete the Delancey Street Program. (Doc. No. 178 (Sentencing Transcript) at 11.) The court explained to defendant Wilson at the September 11, 2017 hearing as follows:

> [The Court:] And if you go to Delancey Street and if you succeed, your sentence will be a lot less than is being recommended here.
>
> But if you fail, it's going to be a lot more. In other words, it would probably be upward near ten years instead of 48 months. That's a huge difference.
>
> But what I'm really saying to you is I don't mind betting on you, but not unless you are going to bet on yourself.
>
> The Defendant: I will bet on myself. I feel like I need help and I feel like I can complete the program because I'm strong-minded, and I want to be back to my family. And I have kids, and they need me, and I provide for them. I have a job.

(*Id.*) Defendant entered the Delancey Street Program on September 23, 2017. (Doc. No. 142.) However, on December 27, 2017, the court was required to issue an arrest warrant for defendant

15

after he failed to comply with the rules of that program. (Doc. No. 130.) Specifically, defendant was asked to leave Delancey Street after only three months because, according to program staff, he was caught with prohibited "cell phones" and was "constantly lying." (Doc. No. 142.) When the defendant returned to court for sentencing on March 19, 2018, instead of imposing the "upward near ten years" referred to at the September 11, 2017 hearing, the sentencing judge sentenced defendant Wilson to a term of imprisonment of 96 months, just nine months above the top of the applicable advisory sentencing guideline range. (Doc. Nos. 141; 143 at 2.) The undersigned will not second guess the judgment of the sentencing judge in light of this history.

Based upon the circumstances recounted above, it cannot be said that defendant's history and characteristics weigh in favor of granting his motion for compassionate release. *See* § 3553(a); *see also United States v. Van Dyke*, No. 2:15-CR-0025-JLQ, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020) ("Defendant's history of repeated supervised release violations demonstrates a disregard for the conditions the Court has placed upon him."); *United States v. Flores*, No. 19CR4340-CAB, 2020 WL 5230548 (S.D. Cal. Sept. 1, 2020) (concluding § 3553(a) did not support compassionate release of defendant who had a history of "violations of court orders").

Finally, it should be noted that as of the date of this order, it appears defendant Wilson has served only approximately 34 months of his 96-month sentence. (*See* Doc. No. 246-1 at 4.) In the undersigned's view, a 34-month sentence (and a 62-month reduction of the sentence that was imposed) would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* § 3553(a); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

/////

/////

**CONCLUSION**

For the reasons explained above, the court concludes that defendant has not met his burden of demonstrating that "extraordinary and compelling reasons" exist warranting his compassionate release from prison. Moreover, the court finds that the granting of release at this time would also not be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Accordingly, defendant's motion for compassionate release (Doc. No. 242) is denied.

IT IS SO ORDERED.

Dated: **September 28, 2020**

_____
UNITED STATES DISTRICT JUDGE