1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:15-cr-00046-NONE

12                                          ORDER DENYING MOTION TO VACATE,
              Plaintiff-Respondent,         SET ASIDE, OR CORRECT A SENTENCE
13                                          UNDER 28 U.S.C. § 2255 IN LARGE PART
                                            AND SETTING SCHEDULE FOR FURTHER
14        v.                                BRIEFING AS TO ONE CLAIM

15                                          (Doc. Nos. 146, 147, 148, 149, 150, 152, 155,
     LANCE AARON WILSON,                    156, 161, 163, 201)
16
              Defendant-Movant.
17

18

19        Lance Aaron Wilson, a federal prisoner proceeding *pro se*, moves to vacate, set aside, or

20   correct his sentence under 28 U.S.C. § 2255.  (Doc. Nos. 146–49, 150, 152, 155–56, 161, 163,

21   201.)  The government filed its opposition and movant filed his reply thereto.  (Doc. Nos. 227,

22   237.)  For the reasons explained below, movant's motion will in large part be denied at this time

23   and the court will direct the filing of a sur-reply by the government addressing movant's claim

24   2(f) in which he has alleged that he received ineffective assistance due to his counsel's  failure to

25   file a notice of appeal.

26                                    **BACKGROUND**

27        In 2016, movant pleaded guilty pursuant to a plea agreement to conspiring to distribute

28   oxycodone and hydrocodone in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Doc. Nos. 94

                                            1

at 2; 95.)  It was determined that the advisory U.S. Sentencing Guidelines called for a term of imprisonment in his case of between 70 and 87 months, but the U.S. Probation Office recommended a downward variance based upon consideration of the sentencing factors set out at 18 U.S.C. § 3553(a) and a sentence of 48 months in prison.  (Doc. No. 107 at 29.)  Movant elected to delay his sentencing so he could participate in a drug rehabilitation program at Delancey Street in an effort to ultimately be sentenced to a term of imprisonment below the recommended 48 months, despite the then-assigned District Judge's explicit warning to movant that he would receive a sentence well above probation's 48-month recommendation if he were to be unsuccessful in completing that rehabilitation program.  (Doc. No. 178 at 7–11.)  Shortly after entering, movant was terminated from Delancey Street for violating the program's rules.  (Doc. Nos. 130, 142.)  On March 19, 2018, movant returned to court for sentencing and was sentenced to 96 months in prison.  (Doc. Nos. 141; 143 at 2.)

On May 29, 2018, movant filed a motion with the court seeking relief under 28 U.S.C. § 2255.  (Doc. No. 149.)  The motion was one of several simultaneously filed documents, all of which collaterally attacked his sentence, and the additional filings are construed as raising additional grounds for habeas relief or as supplementing movant's § 2255 motion.  (Doc. Nos. 146–148; 150–52.)  Movant also filed additional § 2255 motions, construed as amendments and supplements on May 31, 2018; June 7, 2018; October 3, 2018; October 12, 2018; and April 19, 2019.  (Doc. Nos. 155, 156, 161, 163, 201.)  Due in part to the number of movant's filings, the government was given additional time to respond thereto on several occasions.  (Doc. Nos. 164, 172, 191, 200, 212, 219, 226.)  Broadly speaking, movant's grounds for relief include claims of ineffective or conflicted assistance of counsel; an unknowing or involuntary plea of guilty; and various alleged sentencing errors.  On September 27, 2019, the government filed its opposition to the cumulative grounds raised in the § 2255 motion, amendments, and supplements.  (Doc. No. 227.)  On December 30, 2019, movant filed his reply.  (Doc. No. 237.)

**LEGAL STANDARD**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to

1   § 2255, filed in the court which imposed sentence.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th
2   Cir. 1988).  A § 2255 motion entitles a federal prisoner to relief "[i]f the court finds that . . . there
3   has been . . .a denial or infringement of the constitutional rights of the prisoner . . . ."  28 U.S.C.
4   § 2255(b).

5          Generally, only a narrow range of claims fall within the scope of § 2255.  *United States v.*
6   *Wilcox*, 640 F.2d 970, 972 (9th Cir. 1981).  To warrant relief, a movant must demonstrate the
7   existence of an error of constitutional magnitude that had a substantial and injurious effect or
8   influence on the guilty plea or the jury's verdict.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637
9   (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now
10  that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to
11  those under section 2254.").  The alleged error of law must be "a fundamental defect which
12  inherently results in a complete miscarriage of justice."  *Davis v. United States*, 417 U.S. 333, 346
13  (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

14         As a *pro se* litigant, the movant's pleadings are accorded liberal construction and held to a
15  less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551
16  U.S. 89, 93–94 (2007).  However, the requirement of liberal construction does not mean that the
17  court can ignore an obvious failure to allege facts that set forth a cognizable claim.  "Conclusory
18  allegations which are not supported by a statement of specific facts do not warrant habeas relief."
19  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156,
20  1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not
21  support relief); *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980) ("We also concur in
22  the dismissal of the allegations concerning the photographic array shown to some witnesses as
23  vague, conclusory and without any facts alleged in support of the claim."); *Neighbors v. United*
24  *States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion where allegations
25  regarding ineffective assistance of counsel were entirely conclusory and without support in the
26  record).
27  /////
28  /////

3

**ANALYSIS**

Movant's motion, amendments, and supplements present many issues, often overlapping and frequently repetitious.  The claims may be consolidated into five primary grounds for relief, three of which include subclaims.  The <u>first category</u> concerns whether movant's guilty plea was knowingly and voluntarily entered, including claims of ineffective assistance of counsel ("IAC") related to his change of plea.  In this regard, movant alleges that:  (a) his attorney had a conflict of interest throughout his representation that arose when the attorney represented a co-defendant; (b) movant was not told by his attorney that he had a defense to the charges brought against him; (c) movant was pressured into accepting a plea bargain; (d) his counsel told movant to plead guilty or he would receive a harsher prison sentence; (e) his counsel promised movant a 48-month sentence because a more culpable co-defendant received a shorter sentence; (f) movant did not know that his sentencing guideline offense level would be increased by a firearm enhancement at sentencing; (g) his counsel would not file motions on movant's behalf or provide discovery to movant; (h) his counsel failed to advise movant of the elements of conspiracy; and (i) his counsel misled movant and convinced him to plead guilty.  (Doc. Nos. 146, 147, 148, 149, 150, 152, 155, 156, 161.)

The <u>second category</u> covers IAC allegations due to a variety of purported mistakes made by his counsel.  Those mistakes encompass each stage of the litigation process and include claims that counsel:  (a) failed to argue movant was entitled to a reduction in his offense level under U.S.S.G. § 2D.1(b)(16); (b) failed to argue that the drug quantity involved in his offense of conviction was required to be proven beyond a reasonable doubt; (c) failed to argue that movant was not responsible for all the drugs in the conspiracy and failed to ask the court to make particularized findings as to the drug quantity for which movant was responsible; (d) did not have federal experience in that he was only licensed for 14 months; (e) failed to argue for a two-level reduction for a minimal role where movant lacked full knowledge of the conspiracy and failed to profit from it; (f) failed to file a notice of appeal based on the firearm upward adjustment applied to movant's sentencing guidelines; and (g) failed to investigate the reasons why movant was terminated from Delancey Street.  (Doc. Nos. 146, 147, 149, 150, 152, 155, 156, 161, 163, 201.)

1          The <u>third category</u> of grounds for relief involves an alleged Sixth Amendment violation

2    related to the government's claimed failure to prove the drug quantity at issue beyond a

3    reasonable doubt.[1]  (Doc. Nos. 147, 149, 150, 152, 156, 163.)

4          The <u>fourth category</u> of grounds upon which movant seeks relief concerns alleged

5    sentencing errors.  In this regard, movant avers that:  (a) the sentence imposed in his case

6    exceeded the maximum sentence authorized by 21 U.S.C. § 841(b)(1)(B); (b) the court calculated

7    the advisory sentencing guideline range incorrectly by declining to apply a reduction in the

8    offense level under U.S.S.G. §2D.1(b)(16); (c) a quantity-related upward adjustment in the

9    offense level could not be imposed because the drug quantity was not found beyond a reasonable

10   doubt; (d) movant could not be found responsible, and an upward adjustment applied, for the drug

11   quantity in the entire conspiracy because he had only begun a relationship with his co-defendant

12   five months prior to his arrest; (e) movant received a disparate sentence when the court sentenced

13   him to 96 months in prison yet sentenced his co-defendant to 48 months' imprisonment; and (f)

14   movant was allegedly promised 48 months in prison but received a 96-month sentence.  (Doc.

15   Nos. 146, 147, 149, 150, 152, 156, 161, 163.)

16         As noted at the outset, movant entered into a plea of guilty pursuant to a plea agreement

17   that included a specific waiver of his right to collaterally attack his plea, conviction and sentence.

18   It is also the case, however, that "[c]laims that the plea or waiver itself was involuntary or that

19   ineffective assistance of counsel rendered the plea or waiver involuntary [] may not be waived."

20   *Davies v. Benov*, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017).  Thus, the court will first address

21   whether defendant's plea agreement, which contains a specific waiver of his right to collaterally

22   attack his plea, conviction and sentence, was made voluntarily and knowingly.

23   /////

24   /////

25   /////

26   ————————————————

27   [1]  Movant often casts the same essential claim through different vehicles, such as IAC, alleged
     government error, and alleged court error.  Where possible, the court has collapsed the claims and
28   analyzed them in a way that encompasses each variation.  Additionally, not every variation of
     these claims constitutes a cognizable claim.

5

1    **A.    Movant's Plea Agreement (First Category of Claims)**

2        1.    Claim 1(a)—Conflict of Interest

3        Movant argues there was a conflict of interest with his trial, Ryan Roth, because attorney

4    Roth purportedly represented one of movant's co-defendants, Christina Martinez, in relation to

5    the conduct at issue in the underlying federal case.[2]  (Doc. Nos. 147, 148, 156.)  Movant argues

6    that this alleged conflict of interest existed at the beginning of his representation by attorney Roth

7    and pervaded much of the legal representation that his counsel provided, which included the

8    negotiation of movant's plea agreement.  Because this type of conflict-of-interest claim cannot be

9    waived by a knowing and voluntary plea agreement, *see Washington v. Lampert*, 422 F.3d 864,

10   871–72 (9th Cir. 2005), the court will address the claim on the merits below.

11       To demonstrate an "actual conflict of interest," a movant must demonstrate that:

12   (1) counsel represented conflicting interests and (2) the conflict adversely affected counsel's

13   performance.  *See United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001).  "An actual conflict

14   need not be a direct conflict, and it need not established separately from adverse effect.

15   Instead, an actual conflict 'is a conflict of interest that adversely affects counsel's performance.'"

16   *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) (citation omitted).  "There is an actual, relevant

17   conflict of interests if, during the course of the representation, the defendants' interests do diverge

18   with respect to a material factual or legal issue or to a course of action."  *Cuyler v. Sullivan*, 446

19   U.S. 335, 356 n.3 (1980).  Thus, an "actual conflict" is one "that affected counsel's

20   performance—as opposed to a mere theoretical division of loyalties."  *Mickens v. Taylor*, 535

21   U.S. 162, 171 (2002).  This inquiry is fact specific because an "actual conflict is defined by its

22   impact" on counsel's representation.  *See Hovey*, 458 F.3d at 908.

23       Here, movant fails to satisfy the standard for establishing that an actual conflict of interest

24   existed.  First, there is no evidence before the court that counsel's limited representation of

25   movant's co-defendant for purposes of a state court arraignment prior to movant's federal

26

27   _____

     [2]  Movant raised this argument on September 28, 2016, but the then-assigned District Judge

28   rejected it.  (Doc. Nos. 82, 179.)  About two months later, movant pled guilty in this case.  (Doc. No. 94.)

indictment rose to the level of creating "conflicted interests" between the two defendants in the underlying case.  (*See* Doc. No. 179 at 10.)  As a threshold issue, counsel denies representing movant's co-defendant on an ongoing basis.  (Doc. No. 227-1 at ¶ 7.)  Instead, counsel states that he met with movant and Martinez together regarding their relationship "before any state or federal complaint had been filed" against movant.  (*Id.* at ¶ 16.)  Counsel claims that neither movant nor Martinez provided any information to him that either of them had regarding the underlying conduct.  (*Id.*; Doc. No. 179 at 11.)  Counsel indicated that he did not want to obtain information from either movant or Martinez because, in counsel's view, it was likely that movant and Martinez would be co-defendants in this federal action—which turned out to be correct.  (Doc. No. 179 at 10–11.)  Movant cites no authority suggesting that his counsel's decision to meet with him and Martinez tat the same time, with no sharing any relevant information taking place at that time, rises to the level of creating "conflicting interests" to satisfy the first prong.

Second, there is no indication that counsel's representation of the co-defendant for an arraignment in state court had an adverse effect on movant's representation in this case.  It is movant's burden to demonstrate that counsel's conflict of interest "likely" had some "adverse effect" on counsel's representation of movant.  *See United States v. Walter-Eze*, 869 F.3d 891, 900–01 (9th Cir. 2017); *see also Lockhart v. Terhune*, 250 F.3d 1223, 1231 (9th Cir. 2001) (explaining a defendant needs to show "that 'the attorney's behavior seems to have been influenced' by the conflict") (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994)).  Therefore, movant must demonstrate "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  *Walter-Eze*, 869 F.3d at 901 (citing *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005)); *see also McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003) ("The client must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client.").  This burden "remains a substantial hurdle" for movant.  *See Lockhart*, 250 F.3d at 1231 (quoting *Maiden v. Bunnell*, 35 F.3d 477, 481 (9th Cir. 1994)).

Here, movant fails to explain how any purported "conflicting interests" on the part of counsel actually impacted the legal representation that movant received.  For example, movant argues in conclusory fashion that he was pressured by his counsel to accept a plea deal and that he was promised a 48-month sentence because a more culpable co-defendant's sentence was shorter. These conclusory claims fail to identify a "plausible alternative defense strategy or tactic [that] might have been pursued but was not" *because of the alleged conflict of interest*.  *See Walter-Eze*, 869 F.3d at 901.  Relatedly, movant does not identify any action taken by his counsel that would give rise to an inference that counsel's decisions "impermissibly favored an interest in competition with those of" movant.  *See McClure*, 323 F.3d at 1248.  To the contrary, based on a review of the record, it appears there was "tactical justification" for the decisions that counsel made in representing movant.  *See Lockhart*, 250 F.3d at 1232.  Accordingly, movant's claim alleging a conflict of interest with counsel is without merit.  There was no conflict of interest that preceded the negotiation of movant's plea agreement or affected its negotiation.  Relief with respect to movant's claim 1(a) will therefore be denied.

      2.  <u>Claims 1(b), 1(c), and 1(d)—No Knowledge of Defenses, Pressure to Plea, and</u>
          <u>Pleading Guilty to Avoid a Harsher Sentence</u>

Movant alleges that he was not told by his attorney that he had a defense to the charges brought against him in this action; that he was pressured into accepting a plea deal; and that counsel told movant to plead guilty or he would receive a harsher prison sentence.  (Doc. Nos. 146, 155, 156.)  Regarding the first contention—that movant was not told he had a defense[3]—the allegation is conclusory and lacking in facts and details.  (Doc. No. 146 at 1.)  Movant has not

---

[3]  Movant states in one filing:  "Counsel never discussed a defense, nor told me of any right." (Doc. No. 146 at 1.)  The court construes the latter as implicating movant's rights related to a defense.  However, if movant intended this phrase to be construed more broadly, the allegation is conclusory and cannot support the granting of relief under § 2255.  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief).  The allegation also is "so palpably incredible or patently frivolous as to warrant summary dismissal," when viewed against the record, including several colloquies with the court concerning movant's discussions with his counsel (e.g., Doc. Nos. 178, 179, 198).  *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotations and citations omitted); *see also United States v. Withers*, 638 F.3d 1055, 1055, 1062–63 (9th Cir. 2011).

8

1   explained what defense he was unaware of but which he later learned was available to him.  The

2   conclusory nature of movant's claims cannot support § 2255 relief.  "Conclusory allegations

3   which are not supported by a statement of specific facts do not warrant habeas relief."  *James v.*

4   *Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Shah v. United States*, 878 F.2d 1156, 1161 (9th

5   Cir. 1989) (stating "vague and conclusory" allegations in a § 2255 motion do not support relief).

6   In addition, a defendant's lack of awareness of a defense prior to pleading guilty does not

7   necessarily implicate the knowing and voluntary nature of a plea.  *United States v. Baramdyka*, 95

8   F.3d 840, 844 (9th Cir. 1996) (affirming the district court, finding that defendant's plea was

9   knowing and voluntary, and stating:  "That [movant] may have been unaware of the fact that he

10  had an affirmative defense of lack of personal jurisdiction as to [a count of the indictment] does

11  not alter this analysis.").

12        With respect to movant's second contention—that he was pressured into pleading—the

13  allegation is likewise devoid of supporting facts and is purely conclusory.  (Doc. No. 156 at 18.)

14  Therefore, it cannot support § 2255 relief.  *See James*, 24 F.3d at 26; *see also Shah*, 878 F.2d at

15  1161.  Movant does not explain what pressure was placed on him, outside the pressure inherent in

16  any criminal prosecution, and by whom that pressure was applied.  Further, the claim is also

17  contradicted on its face by movant's plea agreement and his colloquy with the court at his change

18  of plea, during which movant attested that no one was "forcing" or "threatening" him to get him

19  to plead guilty.  (Doc. Nos. 94; 198 at 5:7–9.)

20        Movant's third contention—that he was told to plead guilty in order to avoid a harsher

21  sentence—cannot support the granting of § 2255 relief.  (Doc. Nos. 155, 156.)  Movant provides

22  little information to explain and support this claim,[4] and therefore his claim may be denied as

23  conclusory.  S*ee James*, 24 F.3d at 26; *see also Shah*, 878 F.2d at 1161.  It is also relevant to note

24  that movant received a three-level reduction in the calculation of his offense level under the

25  sentencing guidelines for acceptance of responsibility.  (Doc. No. 107.)  If movant had gone to

26

27  ────────────────

28  [4]  Movant alleges that he was told the then-presiding district court judge was "strict" and would
    "give [movant] a lot of time if [movant didn't] plea."  (Doc. No. 155.)  Movant states that his plea
    was thus "made out of fear."  (*Id.*)  Movant provides no other information or context to this claim.

1    trial and been found guilty, he possibly would not have received that offense level reduction at

2    sentencing.

3         For the reasons stated above, movant's claims 1(b), 1(c), and 1(d) will be rejected.

4         3.   Claims 1(e)—The 48-Month Sentence

5         Movant's next ground for relief is premised on his contention that his counsel promised

6    movant a 48-month sentence because a more culpable co-defendant had received a shorter

7    sentence.  (Doc. Nos. 146, 149, 155, 156.)  Movant's plea agreement, his change of plea hearing,

8    and a separate hearing held on September 11, 2017, are all relevant to consideration of this claim.

9    First, movant's plea agreement, which he signed on November 18, 2016, informed him that the

10   court was not a party to the plea agreement, that sentencing was within the sole discretion of the

11   court, and that the court was not required to follow the government's sentencing recommendation.

12   (Doc. No. 94 at ¶¶ 2(e), 5.)  The plea agreement further informed movant that the maximum

13   sentence he could receive was up to twenty years of imprisonment but that the government would

14   make a recommendation to the court at the low end of movant's advisory sentencing guideline

15   range as determined.  (*Id*. at ¶¶ 3(c), 5.)  Second, the information regarding movant's sentencing

16   maximum was repeated by the court during movant's change of plea, as was the fact that the

17   court was not a party to or bound by the parties' plea agreement.  (Doc. No. 198 at 3:20–4:2,

18   5:13–16.)  Third, at a hearing on September 11, 2017, movant requested that the court defer

19   sentencing and instead release him to a treatment program – Delancey Street.  (Doc. No. 178,

20   7:22–8:14, 11:12–16, 12:7–9.)  The sentencing judge advised movant that he would grant

21   movant's request to enter Delancey Street but that rather than 48 months of imprisonment,

22   movant would be facing closer to a ten year term of imprisonment if he was terminated from that

23   treatment program.  (*Id*. at 11:3–8, 11:17–12:4, 12:22–13:2.)  Movant maintained that he

24   nonetheless wished to enter rehabilitation at Delancey Street, even knowing the consequences if

25   he was not successful in completing that program.  (*Id*. at 11:12–16, 12:7–12, 12:22–13:5, 13:10–

26   20.)

27         Viewing all of this information together, movant's claim that he was induced to plead

28   guilty by the promise of a 48-month sentence is unpersuasive and without merit.  Movant's plea

1   agreement and change of plea hearing informed him prior to entering his plea that he could be

2   sentenced to far more than 48 months of imprisonment.  Nevertheless, after movant's guilty plea

3   was entered and before movant requested to be released to a treatment program, the sentencing

4   judge indicated its willingness to sentence movant to that 48 month term.  Instead of choosing to

5   be sentenced to the term of imprisonment movant claims he initially expected, movant asked to

6   enter a treatment program after being fully apprised of the consequences were he to be terminated

7   from that program.  For those reasons, movant's claim 1(e) will also be rejected.

8         4.   Claims 1(f)—The Firearm Enhancement

9         Next, movant argues that he was unaware an upward adjustment in his offense level due

10   to the presence or use of a firearm would be applied to his sentencing guideline calculation

11   because it was not part of his plea agreement, and that prior to signing his plea agreement, he

12   should have known his guideline range with certainty.  (Doc. No. 161 at 1–3.)  Movant's

13   argument fails for four reasons.  First, assuming *arguendo* that movant's counsel did not discuss

14   the firearm enhancement with him, movant's plea agreement indicated that U.S. Probation Office

15   would calculate movant's guideline range, and the agreement further stated that the court would

16   determine a non-binding and advisory guideline range in arriving at its sentence.  (Doc. No. 94 at

17   ¶ 2(d), 5.)  Second, movant was apprised more than once before he entered his guilty plea that a

18   guideline range as calculated is not binding on the court.  (*Id.*; Doc. No. 198 at 5:17–21.)  Third,

19   movant also was also apprised that his potential maximum sentence was 20 years of

20   imprisonment, as noted above, which was well above his guideline range with or without the

21   upward adjustment for the firearm.  (Doc. Nos. 94 at ¶ 5; 198 at 3:20–4:2.)  Fourth, and finally,

22   movant's purportedly-desired sentence of 48 months was well below his advisory sentencing

23   guideline range as calculated, with or without the firearm adjustment.  Going to trial would have

24   exposed movant to the same maximum sentence of 20 years in prison and the same potential for

25   the imposition of a firearm adjustment and his guideline range may possibly not have been

26   reduced for acceptance of responsibility.

27         The court also notes that the firearm upward adjustment was reflected in movant's

28   presentence report, which he reviewed prior to sentencing.  (Doc. No. 107.)  While movant had

1   already entered his guilty plea at that point, he could have moved to withdraw his plea because he

2   had not yet been sentenced by the court.  *See* Fed. R. Crim. P. 11(d)(2)(B).  Movant did not do so

3   but instead confirmed to the court that he had reviewed the presentence report with his attorney

4   and that he had no questions concerning it.  (Doc. No. 178 at 2:11–15.)

5   In light of all of the above, movant's claim that his plea was not knowingly and

6   voluntarily entered due to the imposition of an upward adjustment for a firearm is without merit.

7   5.  Claims 1(g)—No Motions or Discovery[5]

8   Next, movant claims that his plea was involuntary or unknowing because his counsel

9   would not file motions and did not provide movant with discovery.  (Doc. Nos. 147; 149; 156 at

10   18.)  However, movant does not explain what motions he believes his counsel should have filed

11   but did not, or how those motions would have affected the outcome of the case.  (*Id.*)  In his reply

12   brief, movant argues that his attorney should have filed, for example, a motion regarding

13   movant's participation in the drug conspiracy and that the conspiracy charge brought against him

14   should have been dismissed.  (Doc. No. 237 at 16–17.)  Movant's argument does not address the

15   prongs of "deficient performance" and "prejudice," as required under *Strickland v. Washington*,

16   466 U.S. 668, 692 (1984).  Rather, movant's reply merely expresses his personal belief that he

17   was not criminally culpable for the conduct to which he pled guilty.  To the extent movant's

18   claim as stated in his motion is conclusory, relief must be denied.  As noted above, a conclusory

19   allegation cannot support § 2255 relief.  *See James*, 24 F.3d at 26; *see also Shah*, 878 F.2d at

20   1161.  To the extent movant seeks to present new facts or argument in his reply brief, his claim is

21   also flawed, even considering the new information, because movant fails to explain, as a matter of

22

23   [5]  Movant alleged in one filing that his attorney "did not file any motions, would not move for

24   bail, etc."  (Doc. No. 147 at 1.)  The latter allegation regarding bail is perplexing to the court.
    Movant was released from custody on pretrial release conditions that were set on March 2, 2015.

25   (Doc. No. 35.)  Movant violated those conditions of release three different times.  (Doc. Nos. 44,
    63, 112.)  Upon review of the first two violations, movant was re-released.  (Doc. Nos. 45, 64.)

26   On the third occasion, however, movant's pretrial release was finally revoked.  (Doc. No. 114.)
    That date, August 9, 2017, was shortly before movant asked on September 11, 2017, to be

27   released to a treatment program, and the court agreed to do so rather than sentencing him at that
    time.  (Doc. Nos. 124, 125, 178.)  Because movant's bail allegation is conclusory and appears to

28   be without any basis in fact, the claim will be rejected.

1 | law, how his counsel's performance was deficient and how that allegedly deficient performance

2 | prejudiced movant.

3 |      Movant argues that counsel would not "give [movant]" discovery and did not provide

4 | discovery "when asked."  (Doc. Nos. 149; 156 at 18.)  Movant's dispute seems to center on his

5 | mode of access to the discovery in his case, in that movant was only permitted to view unredacted

6 | discovery in his counsel's office because the discovery was the subject of a protective order.  (*See*

7 | Doc. No. 39.)  On September 28, 2016, movant raised this issue with the court, stating he had

8 | never been able to review the discovery or the government's evidence against him.  (Doc. No.

9 | 179 at 2:16–19, 3:9–11, 4:22–24.)  Eventually, movant clarified that he had, in fact, reviewed

10 | approximately 2,000 pages of discovery in his counsel's office, but he had not seen the remainder

11 | (approximately 3,000 pages).  (*Id*. at 6:5–17, 7:3–6.)  Movant also stated his belief that he should

12 | be able to take a copy of the discovery materials home.  (*Id*. at 6:13–17, 20:12–22.)  He averred

13 | that his counsel had not contacted him to arrange additional time to view the remaining discovery,

14 | though movant also never contacted counsel to view the discovery, either.  (*Id*. at 7:4–13, 13:12–

15 | 16, 17:5–8.)  By movant's own words, his counsel did not withhold discovery from him or

16 | prevent movant's access to it.  Rather, movant was restricted to viewing unredacted discovery in

17 | his counsel's office, and movant did not avail himself of the opportunity to review it there.  (*Id*. at

18 | 14:4–11.)

19 |      For these reasons, movant's claim 1(g) does not entitle him to relief.

20 |      6.  <u>Claim 1(h)—Failing to Advise on Elements of Conspiracy</u>

21 |      Movant argues that his trial court counsel was ineffective for failing to advise movant of

22 | the elements of the crime of conspiracy or what the government would have to prove in order to

23 | obtain his conviction on that charge.  (Doc. Nos. 149, 150.)  Movant's signed plea agreement,

24 | however, included a count charging him with conspiracy to distribute oxycodone and

25 | hydrocodone.  (Doc. No. 94 at ¶ 2(b).)  The factual basis for movant's plea of guilty and the

26 | elements of that offense were set out in writing in the plea agreement which movant signed, along

27 | with a provision stating that defendant "fully understands the nature and elements of the crime

28 | with which he has been charged[.]"  (*Id.* at ¶ 4(b).)  Additionally, at movant's change of plea

hearing, the court specifically asked whether movant had read and understood the elements of the conspiracy count to which he was entering a plea of guilty, and movant responded that he had. (Doc. No. 198 at 3:13–19.)  The court asked the same about the factual basis for the plea, and movant again responded affirmatively.  (*Id*.)  Movant also agreed that he had reviewed his plea agreement with his attorney and had no questions about its terms.  (*Id*. at 2:19–3:3.)  Movant's claim that counsel failed to inform him of the elements of the crime of conspiracy is thus specifically contradicted by the record in this case.  Accordingly, movant is not entitled to relief on his Claim 1(h).

### 7.  Claim 1(i)—Misleading Movant and Convincing Him to Plead Guilty

Movant next asserts that his counsel was ineffective for misleading him and convincing him to plead guilty.  (Doc. No. 150.)  Movant does not clearly identify what he claims was misleading or how his attorney convinced him to plead guilty.  Since this assertion was the last in a series of seven numbered points, the court will assume *arguendo* that the content of the preceding six points of his motion forms the substance of the assertion.  Doing so, however, incorporates several issues that are not implicated in a knowing and voluntary plea.  Movant asserts that counsel:  did not have prior federal criminal experience; did not inform movant that any drug quantity involved in the offense of conviction would have to be proven by the government beyond a reasonable doubt; failed to object to parts of the presentence report; and was not aware that the sentencing judge would determine the quantity of drugs attributable to movant in connection with the offense of conviction.  (*Id*.)  Only one point advanced by movant—counsel's alleged failure to advise movant of the elements of the crime of conspiracy to distribute oxycodone and hydrocodone—is clearly relevant to movant's entry of his guilty plea and, as explained above, that claim has no merit.  Relief will therefore be denied as to movant's claim 1(i).

### 8.  Knowing and Voluntary Waiver of Right to Collaterally Attack

Finding no merit to movant's claims that his attorney had a conflict of interest and his other claims bearing on the knowing and voluntary nature of his plea of guilty, the court will now /////

14

examines the plea agreement itself to determine its effect on the remainder of movant's claims.[6]

"A defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *Davies*, 856 F.3d at 1246–47 (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)). Such waiver is enforceable even though the defendant "may not know the specific detailed consequences of invoking it," *United States v. Ruiz*, 536 U.S. 622, 629–30 (2002), may "not be aware of possible grounds of appeal" or "the severity of the sentence that will be imposed," *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016).

At a change of plea hearing, "[a] district court is required to inform the defendant of 'the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence,'" and if the district court does so, the Ninth Circuit has held that such procedure is "sufficient to find a knowing and voluntary waiver." *Lo*, 839 F.3d at 785 (citations omitted); *see also* Fed. R. Crim. P. 11(b)(1)(N). "The failure of a court to do so, however, is not plain error where evidence in the record shows that the defendant waived appellate rights knowingly and voluntarily." *Lo*, 839 F.3d at 785. Accordingly, in determining whether a waiver was knowingly and voluntarily made, courts must consider the "circumstances surrounding the signing and entry of the plea agreement . . . ." *Id.* at 783; *see also United States v. Watson*, 582 F.3d 974, 987 (9th Cir. 2009) (holding there was no plain error in failing to strictly comply with Rule 11(b)(1)(N)

---

[6] Movant also alleges that the court erred in denying his request to discharge his counsel. (Doc. No. 156 at 14; *see also* Doc. Nos. 146, 147, 150.) Even construing this as a claim of ineffective assistance of counsel, movant appears to base his contention in this regard on the amount of time his counsel had been a member of the bar and how long his counsel had been engaged in the practice of law. (*Id.*) The relative experience level of counsel or when they became a member of the bar are not determinative of their effectiveness as counsel. *United States v. Cronic*, 466 U.S. 648, 665 (1984) ("Every experienced criminal defense attorney once tried his first criminal case. … The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation.") The court has examined movant's claims that bear on the knowing and voluntary nature of his plea of guilty, including his allegations of ineffective assistance relative to that, and concluded that his claims lack merit. *See* § A(1)–(7). Movant's claims of ineffective assistance based on his attorney's experience are also without merit and will therefore be rejected as the basis for relief.

15

where there was an otherwise "diligent colloquy" and defendant provided "written assurances that he adequately reviewed the terms of the plea agreement"); *United States v. Cisneros-Cuevas*, No. 15-cr-1837-BAS, 2017 WL 432817, at *2 (S.D. Cal. Jan. 31, 2017) (concluding defendant "waived his right to file this collateral attack on his sentence" because he "agreed to waive his right to attack the conviction or sentence" in his plea agreement).

"A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). The Supreme Court has instructed, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but they "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Here, movant's waiver of his right to collaterally attack his plea and sentence is enforceable. First, the waiver language in movant's plea agreement specifically encompasses collateral attacks on his conviction and sentence under § 2255. *See Davies*, 856 F.3d at 1246–47. In this regard, movant agreed to "waive[] his right to challenge his conviction, sentence or the manner in which it was determined in any post-conviction proceeding, including but not limited to a motion brought under [28 U.S.C. §§] 2241 or 2255." (Doc. No. 94 ¶ 2(g).)

Second, movant knowingly and voluntarily waived his right to collaterally attack his conviction and sentence under § 2255. *See Davies*, 856 F.3d at 1246–47. At his change of plea hearing, movant verbally informed the court that he understood the terms of his plea agreement, had no questions about those terms, and agreed to the terms of that plea agreement, in addition to signing his plea agreement. (*See* Doc. Nos. 94; 198 at 2:11–5:23.) The court and movant engaged in the following colloquy:

> Q: [] I have your plea agreement here, and I think I have your signature on the last page. Do you recognize that as yours?
>
> A: Yes.
>
> Q: That signature to me means you have had a chance to review this entire document with the help of your lawyer, and if you had questions, you asked, he answered and you don't have any more

questions about this plea agreement.  Is that what that signature means to you?

A: Yes.

. . .

Q:  Do you have any questions then at all about this plea agreement?

A:  No.

. . .

Q:  Is anybody forcing you or threatening you in any way to get you to do this?

A:  No.

Q:  Is anybody promising you something other than what's in the plea agreement?

A:  No.

. . .

Q:  Do you have any questions at all?

A:  No.

. . .

THE COURT: Court accepts the knowing, intelligent and voluntary waiver of rights, knowing, intelligent, and voluntary change of plea.

(Doc. No. 198 at 2:19–3:3, 4:10–12, 5:7–12, 5:22–23, 6:23–25.)  This "diligent colloquy" sufficiently establishes that movant knowingly and voluntarily entered into his plea agreement, thereby waiving his right to collaterally attack his conviction and sentence.  *See Watson*, 582 F.3d at 987; *see also Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (The representations of a defendant at a plea hearing constitute "a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236–37 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.").  Movant acknowledged that the signature on his plea agreement was his and confirmed that the signature represented that he understood all of the terms of his plea agreement.  This further supports the conclusion that movant voluntarily and knowingly waived his right to

1    collaterally attack his conviction and sentence.  *See Cisneros-Cuevas*, 2017 WL 432817, at *2.

2          Movant does not point to any evidence before this court indicating that he failed to

3    understand the terms of his plea agreement, and the claims he now alleges relevant to any such

4    claim are conclusory or otherwise without merit.[7]  (*See* § A(1)–(7).)  Movant therefore has failed

5    to carry his burden of demonstrating that his plea of guilty was not voluntary and knowing.  *See*

6    *Little*, 449 F.3d at 1080.  Accordingly, the court concludes that movant's waiver by way of plea

7    agreement of his right to collaterally attack his conviction and sentence is enforceable.

8        **B.  Ineffective Assistance of Counsel (Second Category of Claims)**

9          As noted, to prevail on an IAC claim, a movant must demonstrate two elements:

10   "deficient performance" and "prejudice."  *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

11   Counsel's "deficient performance" means legal representation that "fell below an objective

12   standard of reasonableness."  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011).  "Prejudice"

13   means that "there is a reasonable probability that, but for counsel's unprofessional errors, the

14   result of the proceeding would have been different."  *United States v. Rodriguez-Vega*, 797 F.3d

15   781, 788 (9th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694).  In the context of plea agreements,

16   "a different result means that 'but for counsel's errors, [the defendant] would either have gone to

17   trial or received a better plea bargain."  *Id.* (quoting *United States v. Howard*, 381 F.3d 873, 882

18   (9th Cir. 2004)).  The two prongs of *Strickland* may be evaluated out of order.  *See Pizzuto v.*

19   *Arave*, 280 F.3d 949, 955 (9th Cir. 2002), *opinion amended and superseded in part*, 385 F.3d

20   1247 (9th Cir. 2004).  A court "'need not determine whether counsel's performance was deficient

21   before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . .

22   . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice .

23   . . that course should be followed.'"  *Id.* (quoting *Strickland*, 466 U.S. at 697).  "Where a

24

25   [7]  In one filing, movant has contended that he "did not waive the following rights:  appeal rights,
     speedy trial rights, and competent attorney rights …." (Doc. No. 152 at 1.)  Movant waived both
26   his right to direct appeal and his right to collaterally attack his plea, conviction and sentence.  (*See*
     Doc. No. 94.)  Through his waiver of those rights, most claims of ineffective assistance of
27   counsel are barred.  Movant's allegation concerning speedy trial rights contains no facts or legal
     argument and will be summarily denied as conclusory.  *See James*, 24 F.3d at 26; *see also Shah*,
28   878 F.2d at 1161.

18

1   prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted

2   by the record, an evidentiary hearing is not required."  *United States v. Quan*, 789 F.2d 711, 715

3   (9th Cir. 1986).

4         1.   IAC Relating to Involuntary and Unknowing Plea Agreement

5         As noted in § A above, IAC claims that concern the voluntary and knowing nature of a

6   plea of guilty cannot be waived.  *Davies*, 856 F.3d at 1246 n.2.  Here, movant's IAC claims that

7   relate to the voluntariness of his plea have been examined by the court, have been found to be

8   without merit, and therefore have been denied.  *See* § A(1)–(8) above.

9         2.   Claims 2(a)–(e)—Waivable IAC Claims

10        The waiver in movant's plea agreement of his right to appeal from or collaterally attack

11   his plea and sentence encompasses many of the claims asserted in the pending motion.  (Doc. No.

12   94.)  These claims include allegations that movant's counsel:  (a) failed to argue movant was

13   entitled to a reduction in his offense level under U.S.S.G. § 2D1.(b)(16); (b) failed to argue that

14   the drug quantity in determining his offense level was required to be proven beyond a reasonable

15   doubt; (c) failed to argue that movant was not responsible for all the drugs involved in the

16   conspiracy and failed to ask the court to make particularized findings as to the drug quantity for

17   which movant was in fact responsible; (d) did not have federal litigation experience since he had

18   only been licensed to practice law for 14 months when representing movant; and (e) failed to

19   argue for a two-level reduction in his offense level due to a mitigated role where movant lacked

20   full knowledge of the conspiracy and did not profit from it.[8]

21        Because these are collateral attacks on movant's conviction and sentence that may be

22   waived by a plea agreement, they cannot be litigated through a § 2255 motion and are thus barred.

23   *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) (indicating that "an ineffective

24   assistance claim related only to counsel's alleged mishandling of the sentencing proceedings, not

25   to the plea or the plea agreement" itself, cannot be challenged under § 2255 if there is a valid

26

27   [8]  Movant also alleged, in a conclusory fashion, that his counsel failed to object "to any of the
     claims" in the presentence investigation report.  (Doc. No. 150; *see also* Doc. No. 156 at 5, 17.)
28   In addition to being conclusory, this allegation is factually incorrect.  (*See* Doc. No. 105.)
     Regardless, movant's claim in this regard was waived by him.

waiver); *United States v. Malauulu*, No. 2:15-cr-00124-KJM, 2020 WL 3642611, at *2–3 (E.D. Cal. July 6, 2020) (concluding that a waiver of collateral attack rights barred any IAC claims not relating to the voluntariness of defendant's entry of plea); *United States v. Daniels*, No. 12-cr-00574-PJH-3, 2019 WL 6050908, at *2 (N.D. Cal. Nov. 15, 2019) (dismissing claims based on alleged errors in the guideline calculation).  Accordingly, the pending motion as to the claims listed above will also be denied.

### 3.   Claim 2(f)—Failure to File a Notice of Appeal

Movant next alleges that his counsel rendered ineffective assistance by failing to file a notice of appeal despite an explicit instruction from movant to do so.[9]  (Doc. No. 161 at 3–4.) Movant avers he had no foreknowledge of the upward adjustment to hid offense level based upon the presence of a firearm that was applied in his case and implies that he only learned of that upward adjustment in the guideline calculation at his sentencing hearing.  (*Id*. at 3.)  His allegation suggests that movant wished to file a notice of appeal based on being "blindsided" by this upward adjustment at sentencing.  (*Id*. at 1, 3.)  The basis of the claim is not entirely clear to the undersigned because movant fails to provide the necessary facts and details to support it.  In any event, two events prevent the court from reaching the merits of this claim.

First, in its opposition, the government argues in part that movant's claim, as stated in his § 2255 motion, is conclusory.  (Doc. No. 227 at 28–30.)  In his reply, movant supplied several new facts and details in support of this claim, and also included an affidavit from his father. (Doc. No. 237 at 13–14, 22–24.)  Because movant's reply brief contained new evidence, the government should have been afforded the opportunity to respond, and it was not.  (*See, e.g., Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (finding that "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond).  Several

---

[9]  Movant also alleges that his counsel was ineffective "for waiving [movant's] appeal."  (Doc. No. 155.)  However, it was movant who entered into a plea agreement specifically waiving his right to appeal, not his attorney, and the court has found that movant's waiver in that regard was made knowingly and voluntarily.  *See* § A(8).

1   circumstances prevented that from occurring with greater expediency.[10]  Still, this claim cannot

2   be decided without providing the government with an opportunity to file a sur-reply, if it so

3   chooses.

4          Second, the government elected not to enforce movant's waiver of his right to collaterally

5   attack his conviction and sentence with respect to this claim.  (Doc. No. 227 at 24.)  That decision

6   by the government must be viewed in light of the Ninth Circuit's decision in *United States v.*

7   *Fabian-Baltazar*, 931 F.3d 1216 (9th Cir. 2019), which was issued only weeks before the

8   government filed its opposition to the pending § 2255 motion.  In *Fabian-Baltazar*, a similarly

9   situated movant signed a plea agreement waiving his rights to appeal and/or collaterally attack

10  his conviction and sentence.  (*Id*. at 1216–17.)  Despite this, the movant filed a § 2255 motion

11  that included a claim asserting ineffective assistance of counsel for failure to file a notice of

12  appeal.  (*Id*.)  The district court denied the movant's motion pursuant to the waiver provision of

13  the plea agreement, finding the claim barred by the collateral attack waiver.  (*Id*. at 1217.)  The

14  movant appealed, and the Ninth Circuit affirmed.  (*Id*.)  The Supreme Court granted a writ of

15  certiorari, vacated the judgment, and remanded the case to the Ninth Circuit for reconsideration in

16  light of the decision in *Garza v. Idaho*, __U.S.__, 139 S. Ct. 738, 744 (2019) (holding that

17  prejudice is presumed when defense counsel fails to file a timely notice of appeal, even where the

18  defendant entered a knowing and voluntary plea agreement waiving his right to appeal).  (*Id*.)  On

19  remand, the Ninth Circuit stated:

20          Unlike [the movant] Garza, Fabian-Baltazar also waived his right to
            collaterally attack his sentence.  But, the government has declined
21          to enforce Fabian-Baltazar's collateral attack waiver on remand.
            Therefore, in contrast to the first time this case was before us, we
22          must analyze it as involving only an appeal waiver.

23

24  *Fabian-Baltazar*, 931 F.3d at 1217.  Such is the case here, making both the Ninth Circuit's

25  guidance to the district court particularly instructive, as well as the district court's analysis on

26  _____

27  [10]  Movant's reply brief was received on December 30, 2019, shortly before the district judge
    then-assigned assumed inactive senior status.  Soon thereafter, the COVID-19 pandemic
28  commenced and movant filed a motion for compassionate release (Doc. No. 242), which was
    litigated over the following months and was not final until late 2020.

1  remand, *Fabian-Baltazar v. United States*, No. 1:13-CR-0032-AWI, 2019 WL 7282046 (E.D.

2  Cal. Dec. 27, 2019).  All of that said, the court cannot engage in the analysis required until the

3  government has been given the opportunity to file its sur-reply addressing this claim.

4         For the above reasons, the court declines to rule on the merits of this claim at this time and

5  will order the government to file a sur-reply addressing it within 45 days of the service of this

6  order.

7              4.  Claim 2(g)—IAC for Failing to Investigate Removal from Drug Treatment

8         Movant alleges that his counsel was ineffective for failing to investigate movant's

9  termination from the rehabilitation program to which the court had released him pending his

10  sentencing.  (Doc. No. 201 at 1.)  In addition, movant alleges that his counsel should have

11  presented witnesses in movant's defense when the court reviewed his termination from that

12  program.  (*Id*. at 2)  The government argues that this claim is barred by the statute of limitations.

13  (Doc. No. 227 at 21–22.)

14         In most instances, a habeas petition must be filed within one year from "the date on which

15  judgment of conviction becomes final."  28 U.S.C. § 2255(f) (enumerating other limitation

16  periods, none of which are relevant here).  In movant's case, his judgment of conviction became

17  final "upon the expiration of the time during which []he could have sought review by direct

18  appeal" from his sentence, *see United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001),

19  which was 14 days after judgment was entered, Fed. R. App. P. 4(b)(1).  Because judgment in

20  movant's case was entered on March 23, 2018, (Doc. No. 143), the statute of limitations period to

21  file a § 2255 motion commenced running on April 6, 2018.  Movant's IAC claim regarding his

22  counsel's alleged failure to investigate movant's termination from his rehabilitation program was

23  signed by movant on April 16, 2019—or 10 days after the statute of limitations with respect to

24  that claim had expired.  (Doc. No. 201 at 2.)  The addendum was received by the court on April

25  19, 2019.  (*Id*. at 1.)  Therefore, this claim was filed after the statute of limitations period expired.

26         Federal Rule of Civil Procedure 15(c) governs the timeliness of an amendment to a habeas

27  petition after the statute of limitations period expires.  *See Anthony v. Cambra*, 236 F. 3d 568, 576

28  (9th Cir. 2000).  An amendment is timely if it "relates back" to the original habeas petition.  Fed.

R. Civ. P. 15(c)(1)(B).  An amendment that "relates back" is one that "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  *Id.*  Put more simply, this requires that the new claim contain a "common core of operative facts" with the original claim.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Thus, an amendment "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.

Movant's original IAC claims, except the allegation of his counsel failing to file a notice of appeal, all concern counsel's alleged deficient performance that occurred before movant entered into his plea agreement, as he entered into his plea agreement, and issues related to the preparation of the presentence investigation report—all of which occurred in April 2017 or earlier.  (*See* Doc. Nos. 146, 147, 149, 150, 156, 163.)  In contrast, this new IAC claim regarding counsel's failure to investigate the reasons movant was terminated early from the Delancey Street program—which occurred in late December 2017—concern "facts that differ in both time and type from those the original pleading set forth."  *See Mayle*, 545 U.S. at 650.  It is therefore time-barred.

Nonetheless, even if movant's claim were to relate back, the claim is also conclusory and lacks facts and details necessary to support the granting of relief under § 2255.  *See James*, 24 F.3d at 26; *see also Shah*, 878 F.2d at 1161.  Movant fails to name or otherwise identify his alleged witnesses.  *See Alcala v. Woodford*, 334 F.3d 862, 872 n.3 (9th Cir. 2003).  He also does not proffer the witnesses' testimony, except through the superficial assertion that the witnesses would have testified in his favor.  *Id.*  As a result, movant's allegations in support of this claim are clearly insufficient.  *Greenway v. Schriro*, 653 F.3d 790, 804–05 (9th Cir. 2011) (finding that the movant's "cursory and vague claim [could] not support habeas relief," in concluding that the district court was not objectively unreasonable in denying ineffective assistance of counsel claim).

For these reasons, this movant's claim will be dismissed as untimely, and in the alternative, will be denied on its merits as conclusory.

1    **C.       Claim 3—Sixth Amendment Violation for Failing to Prove Drug Quantity**

2             Movant argues that his Sixth Amendment rights were violated because the quantity of

3    drugs for which he was found responsible was not proven beyond a reasonable doubt.  (Doc. Nos.

4    149, 156.)  Movant relies on the decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), for

5    this proposition.  However, that case only applies to facts that increase a mandatory minimum

6    sentence.  *See also Hughes v. United States*, 770 F.3d 814 (9th Cir. 2014) (holding *Alleyne* is not

7    retroactive to cases on collateral review).  Movant was sentenced under 21 U.S.C. § 841(b)(1)(C),

8    which authorizes "a term of imprisonment of not more than 20 years …" without requiring a

9    finding of a specific drug quantity.  Movant did not plead guilty to an offense carrying with it a

10   Congressionally mandated minimum sentence, and therefore the holding in *Alleyne* does not

11   apply here.

12            The decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does concern statutory

13   maximum sentences, but that decision also does not support movant's claim.  In *Apprendi*, the

14   Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed

15   statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at

16   490.  However, movant did not receive a sentence exceeding the statutory maximum.  *See United*

17   *States v. Sua*, 307 F.3d 1150, 1154 (9th Cir. 2002) (concluding that "[s]ince [the] sentence was

18   not beyond the prescribed statutory maximum, it did not violate *Apprendi*").  Instead, movant was

19   sentenced to well below the 20-year statutory maximum for the offense of which he was

20   convicted.  *See* 21 U.S.C. § 841(b)(1)(C).  The district court's sentence thus comported with the

21   Sixth Amendment and did not run afoul of the Supreme Court's decisions in *Apprendi* or *Alleyne*.

22   *See United States v. Garcia-Guizar*, 234 F.3d 483, 488–89 (9th Cir. 2000) (stating in passing that

23   a district court may impose a sentence based on a statute containing no drug-quantity

24   requirements, so long as it is less than the statutory maximum sentence, even where the jury

25   makes no finding with respect to the quantity of drugs at issue); *see also United States v.*

26   *Buckland*, 289 F.3d 558 (9th Cir. 2002) (examining sentencing under § 841(b)(1)(A), (B) and

27   contrasting those subsections to § 841(b)(1)(C), which applies to "default cases where quantity is

28   not a sentence-determining factor).  Movant is thus incorrect in his many assertions that he was

24

1   sentenced based on a court-determined drug quantity, or that a jury had to determine the quantity

2   of drugs for which he was responsible beyond a reasonable doubt.  (Doc. Nos. 147, 149, 150, 152,

3   156, 163.)  For the same reasons as above, movant's related claims cannot be sustained.

4   Movant's Sixth Amendment violation claim will therefore also be denied.

5   **D.      Sentencing Errors (Fourth Category of Claims)[11]**

6         1.   Claims 4(b)–(e)—Waivable Claims Related to Movant's Sentence

7         Movant makes several claims alleging errors in the calculation of his sentence.  However,

8   movant's plea agreement included a waiver of his right to collaterally attack his "sentence, or the

9   manner in which it was determined."  (Doc. No. 94 at 3–4.)  Because the court has found that

10   movant's plea was both knowing and voluntary, the plea agreement bars most of movant's

11   sentence-related claims.  *See* § A.  Only those claims alleging that movant's sentence exceeds the

12   statutory maximum are reviewable.  For those reasons, the following claims are barred by the

13   waiver contained in movant's plea agreement and therefore denied:  (b) that the court calculated

14   the sentencing guideline range incorrectly by not applying an offense level reduction under

15   U.S.S.G. §2D.1(b)(16); (c) that a quantity-related upward adjustment in the offense level could

16   not be imposed because the drug quantity was not found beyond a reasonable doubt; (d) that

17   movant could not be found responsible, and an upward offense level adjustment applied, for the

18   drug quantity involved in the entire conspiracy because he had only begun a relationship with his

19   co-defendant five months prior to his arrest; and (f) that movant received a disparate sentence

20   when the court sentenced him to 96 months in prison yet sentenced his co-defendant to 48 month

21   term of incarceration.  (Doc. Nos. 146, 147, 149, 152, 156, 161, 176.)

22         2.   Claim 4(f)—The 48-Month Sentence

23         Movant alleges that his counsel promised him that he would be sentenced to 48 months of

24   imprisonment, yet movant was sentenced to 96 months.  (Doc. Nos. 146, 149, 155, 156.)  To the

25   extent this claim is alleged in order to suggest movant's plea was not knowing and voluntary, the

26

27   [11]  Movant summarily asserts that his "sentence was procured through fraud."  (Doc. No. 152.)
     Movant does not provide any further information.  Because the claim is wholly conclusory, it will
28   be summarily denied.  *See James*, 24 F.3d at 26; *see also Shah*, 878 F.2d at 1161.

1    court has denied the claim as discussed in § A(3) above.  To the extent movant also alleges that

2    he was sentenced in error because he did not receive a 48-month sentence, movant's claim is

3    rejected because it is barred by his appeal and collateral attack waiver in his plea agreement.

4         3.   Claim 4(a)—Sentence Exceeded Statutory Maximum

5         Movant alleges that he received a term of imprisonment that exceeded the statutory

6    maximum as prescribed under 21 U.S.C. § 841(b)(1)(B).  (Doc. Nos. 149, 156.)  As explained in

7    § C above, movant was sentenced under 21 U.S.C. § 841(b)(1)(C); he was not sentenced under

8    § 841(b)(1)(B).  (*See* Doc. Nos. 94 at 2; 143.)  Because the statutory maximum sentence for his

9    offense of conviction under § 841(b)(1)(C) was 20 years in prison and movant received a

10   sentence of 96 months, his sentence did not exceed the statutory maximum.  (Doc. Nos. 141; 143

11   at 2.)  For that reason, movant's claim in this regard will also be denied.

12   **E.  Certificate of Appealability**

13        The court's order in this matter will not be final until the court has ruled upon movant's

14   claim that his counsel was ineffective by failing to file a notice of appeal on his behalf.  *See* § 2(f)

15   above.  The court, however, indicates its position that a certificate of appealability shall not issue

16   in relation to the claims decided by this order.

17        A movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has

18   first obtained a certificate of appealability.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A

19   certificate of appealability will issue only when a defendant has made "a substantial showing of

20   the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy this standard when the

21   court has dismissed the § 2255 motion (or claims within the § 2255 motion) on procedural

22   grounds, a defendant must show that reasonable jurists would find debatable:  (1) whether the

23   court was correct in its procedural ruling; and (2) whether the motion states a valid claim of the

24   denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When the court

25   has denied the § 2255 motion or claims within the motion on the merits, a defendant must show

26   that reasonable jurists would find the court's decision on the merits to be debatable or wrong.  *Id.*

27        The court concludes that movant has not made a substantial showing of the denial of a

28   constitutional right.  The court further concludes that reasonable jurists would not find debatable

the court's procedural ruling or whether movant's petition states a valid claim of the denial of a constitutional right.  Furthermore, reasonable jurists would not find the court's decisions on the merits debatable or wrong, or otherwise debate the constitutionality of movant Wilson's conviction and sentence.  Issuing a certificate of appealability would be improper under these circumstances.  Accordingly, the court declines to issue a certificate of appealability.

**CONCLUSION**

For the reasons stated above, movant Lance Wilson's § 2255 motion (Doc. Nos. 146, 147, 148, 149, 150, 152, 155, 156, 161, 163, 201) is DENIED with respect to all claims alleged, EXCEPT with respect to movant's claim 2(f) alleging ineffective assistance of counsel based upon his counsel's failure to file a notice of appeal.

Because claim 2(f) cannot be decided without affording the government an opportunity to address the new facts presented in movant's reply (Doc. No. 237), the court hereby ORDERS the government to file a sur-reply addressing that claim within 45 days of the date of service of this order.

IT IS SO ORDERED.

Dated:   __**January 5, 2022**__

_____
UNITED STATES DISTRICT JUDGE