**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff-Respondent,<br><br>v.<br><br>LANCE AARON WILSON,<br><br>                Defendant-Movant. | Case No.  1:15-cr-00046-4-NONE-SKO<br><br>ORDER DENYING THE MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE AS TO THE REMAINING CLAIM AND TERMINATES ALL OTHER PENDING MOTIONS<br><br>(Docs. 148, 149, 151, 152, 155, 156, 201, 221) |

The Court held an evidentiary hearing to determine whether Mr. Wilson instructed his attorney Mr. Roth to file a notice of appeal after he was sentenced. After hearing the testimony of Mr. Wilson and Mr. Roth and considering the exhibits and briefs of the parties, the Court determines that Mr. Wilson has not demonstrated that he instructed Mr. Roth to file a notice of appeal. Also, the Court concludes that though Mr. Roth did not consult with Mr. Wilson about filing a notice of appeal, he did not act incompetently by failing to do so. Thus, the Court **DENIES** the motion to vacate, set aside or correct the sentence.

**I.     Background**

Mr. Wilson plead guilty to conspiring to distribute oxycodone and hydrocodone and was sentenced to 96 months in prison. (Doc. 294) After receiving this sentence, Mr. Wilson testified that he wanted to appeal, but Mr. Roth told him he could not. (Doc. 309 at 9, 36) He asserted that

before signing the plea agreement, he went over the terms with Mr. Roth.[1] (Doc. 305 at 76; Doc. 309 at 98-99)  Mr. Wilson said that Mr. Roth told him, "once I sign this plea agreement, that I'm waiving my rights to an appeal. Like I can no longer appeal . . . He just flat out told me once you sign this plea agreement, you know, that's one of the conditions of the plea agreement, you are giving up your rights to an appeal." (Doc. 305 at 76-77)

Mr. Roth confirmed that he went over the terms of the plea agreements with Mr. Wilson paragraph-by paragraph. (Doc. 305 at 31, 34-35) He said that during the sessions when they discussed the terms of the plea agreement, he explained each paragraph and answered whatever questions Mr. Wilson had about it, before moving to the next paragraph. *Id*. at 31. He said that he told Mr. Wilson that by signing the plea agreement, he would be giving up his right to appeal, but clarified, "I know we talked about the ability to appeal even if you give up your rights. It's the same conversation I think I have with everybody that has these plea agreements. Even if it says you can't do it, if you want to, we can ask . . . my explanation is to file a notice of appeal." *Id*. at 57; Doc. 305 at 17.

Mr. Roth testified also that neither Mr. Wilson, his father nor his girlfriend ever asked him to file a notice of appeal or indicated that Mr. Wilson wished to appeal. (Doc. 305 at 25-26, 29, 43, 53-54) As to whether Mr. Wilson asked about whether he could withdraw his plea or whether he could appeal, Mr. Roth was adamant that, "Neither of those two topics ever came up." (Doc. 305 at 53) He said that if anyone other than Mr. Wilson asked about filing an appeal, he would have gone to Mr. Wilson to inquire whether he wanted to appeal, but that this did not happen. (Doc. 305 at 53-54, 55-56)

**II.     Analysis**

**A.  Mr. Wilson did not instruct his attorney to file an appeal**

In his petition, Mr. Wilson's remaining claim is that his counsel rendered ineffective assistance by failing to file a notice of appeal despite Wilson's instruction to do so. (Doc. 161 at 3-4.) If a defendant expressly requests his attorney to file a notice of appeal and he fails to do so,

---

[1] In fact, because there were two plea offers that were nearly identical, Mr. Roth explained the terms of the agreement on two separate occasions. *Id*.

2

1 the attorney has performed deficiently, and the defendant is presumed to have suffered prejudice.
2 *Garza v. Idaho*, 139 S. Ct. 738, 746 (2019); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 470
3 (2000) ; *Fabian-Baltazar v. United States*, 2019 WL 7282046, at *4 (E.D. Cal. 2019) (citing
4 *Garza*, 139 S.Ct. at 749; *Fabian-Baltazar*, 931 F.3d at 1217).

Despite Mr. Wilson's testimony that he instructed Mr. Roth to file an appeal, the Court does not believe him. First, he testified that he learned in May 2018 that he could have appealed. He had known since March 2018 that his father had also asked Mr. Roth to appeal at the time he was sentenced. Nevertheless, Mr. Wilson waited until December 2019 to assert that Roth failed to file the notice of appeal despite numerous prior filings directed toward having his sentence vacated. Mr. Wilson offers no reasonable explanation for this delay.

Second, Mr. Wilson made claims in his filings that were untrue. For example, Mr. Wilson claimed that he did not waive his appellate rights but admitted in later filings and at the hearing, that he understood that he had done so. (Doc. 148; Doc. 149; Doc. 150; Doc. 152; Doc. 153.) At the hearing and in his pleadings, Mr. Wilson claimed that Mr. Roth promised him that he would receive a sentence that was less than 48 months. (Doc. 309 at 26) However, in his plea agreement, he admitted that no one had made him any promises about any particular sentence and that he acknowledged that the court could impose a sentence up to 20 years without his being able to withdraw his plea. (Doc. 94 at 2, 6, 9) Also, at his change-of-plea hearing, he denied that anyone had made him any promises. (Doc. 198 at 5)

Also, at the initial hearing on his sentencing, the judge told him that if he failed to complete the drug rehabilitation program, he would sentence Mr. Wilson to "near ten years." (Doc. 223 at 3) Mr. Wilson told the sentencing judge that he understood and believed the judge when he told Wilson that this would be the consequence of failing to complete the drug treatment program. *Id*. at 4-5. Nevertheless, at the evidentiary hearing, Mr. Wilson testified that he did not believe the judge meant what he had said and thought that the judge was only trying to "scare him." (Doc. 309 at 6, 47-48) This is patently unbelievable.

Third, the Court found Mr. Wilson's explanations while testifying to be incredible. When pressed on topics that were damaging to his positions, he lacked a memory or lacked a clear

memory. When pressed about topics that were favorable to his position, he claimed to have crystal-clear recall. This is unbelievable. Also, the Court's conclusion that Mr. Wilson lied while testifying is supported by his demeanor while testifying, which was inconsistent with truth-telling.

Fourth, the fact that Mr. Wilson, even now, refuses to accept responsibility for his failure at the drug treatment program and his failure to contact his Pretrial Services Officer once he was discharged from the treatment program, is telling. Also, Mr. Wilson seems, even now, to blame his entire situation on others and to say whatever he needs to say so he won't be held accountable.

On the other hand, the Court recognizes that Mr. Roth's memory of the events was far from perfect, but this is consistent with the amount of time that had passed. The Court found Mr. Roth's demeanor while testifying to demonstrate that he was being forthright about what he remembered and what he didn't. Mr. Roth was very clear—and the Court believed him—when he said that neither Mr. Wilson, his father or girlfriend sought an appeal.[2] Thus, the Court concludes that Mr. Wilson did not instruct his attorney to file an appeal.

**B. Mr. Roth did not violate his duty by failing to consult with Mr. Wilson about filing an appeal.**

At the hearing, it was clear that Mr. Roth did not consult with Mr. Wilson about whether he wished to appeal the sentence. If the attorney does not consult with the defendant about filing an appeal, the Court must determine whether the defendant would want to appeal and/or whether the defendant demonstrated to the attorney that he was interested in appealing. *Flores-Ortega*, 528 U.S.470, 480-481 (2000). To make this evaluation, the Court must consider all the information known to Mr. Roth or which should have been known to him. *Id.*

Mr. Roth knew that Mr. Wilson was sentenced after having plead guilty, which significantly limited "the scope of potentially appealable issues." *Flores-Ortega* at 480. Also, the plea was entered pursuant to a plea agreement, in which Mr. Wilson acknowledged,

> sentencing is a matter solely within the discretion of the Court, the Court is under

---

[2] The Court suspects that the reason Mr. Wilson didn't request an appeal is because he knew he had waived his right to appeal and only after the shock of the sentence wore off and the seriousness of his situation was impressed upon him, did Mr. Wilson begin to seek a way out.

4

> no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

(Doc. 94 at 2) The plea agreement reiterated, "It is understood by the parties that the sentencing Court is neither a party to nor bound by this agreement and the sentencing judge is free to impose the maximum penalties as set forth in paragraph 5 above. Also, should the court fail to follow any or all of the government's sentencing recommendations, the defendant will not be allowed to withdraw his plea." *Id*. at 9.

In connection with the plea agreement, Mr. Roth knew Mr. Wilson admitted that the volume of drugs attributable to his crimes was 1,748.7 grams. (Doc. 94 at 5-6.) He knew Mr. Wilson admitted also that he understood that "the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." *Id*. at 6. He knew that in the plea agreement Mr. Wilson agreed that he would "plead guilty because he is in fact guilty of the crime set forth in Count One of the Indictment." *Id*. at 5. Mr. Roth knew also that Mr. Wilson agreed to "knowingly waive[ ] the right to appeal his conviction, any sentence, the manner in which that sentence was determined, or the denial of any motion to reduce his sentence (so long as the sentence is within the statutory maximum for the crime) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement." *Id*. at 3-4.

Mr. Roth knew that there was no sentence promised to Mr. Wilson even though the presentence report recommended 48 months imprisonment—a below-guideline term. (Doc. 94 at 2; Doc. 107 at 29) On the other hand., Mr. Roth was present when the sentencing judge told him that if he failed to complete the drug treatment program, the court intended to impose a hefty

5

1  sentence of as much as 10 years. Coupled with the fact that Mr. Wilson failed to report to pretrial

2  services after he was discharged from the substance abuse program—necessitating the warrant,

3  which, ultimately, caused his arrest—the eight-year sentence was one that Mr. Wilson should

4  have expected. Finally, Mr. Roth believed that Mr. Wilson was likely to be convicted and that the

5  case was "unwinnable" if it proceeded to trial. (Doc. 305 at 61)

6      Mr. Roth also would have known also that reasonable minds could disagree as to whether

7  Mr. Wilson should have been given such an increased sentenced for his failure to complete the

8  drug treatment program and for absconding while pending sentencing. However, Mr. Roth knew

9  that if Mr. Wilson appealed, this could be a breach of his plea agreement and could result in Mr.

10  Wilson being subject to additional prosecution.[3] (Doc. 94 at 3) Likewise, Mr. Roth would know

11  that sentencing is a uniquely individual and discretionary decision.  In addition, though Mr.

12  Wilson now contends there were sentencing disparities that should have meant he would receive a

13  below-guideline term, he had a criminal history category III and had a long-standing substance

14  abuse history, which distinguished him from other defendants. Thus, the Court does not find that

15  there were clearly nonfrivolous grounds for appeal.

16      Given these considerations and the fact that the Court is obligated to view Mr. Roth's

17  performance with great deference (*Flores-Ortega*, at 477), the Court does not find that Mr. Roth's

18  failure to consult with Mr. Wilson about filing an appeal was not objectively unreasonable.

19  **IV.   Conclusion and Order**

20      Based upon the foregoing, the Court **DENIES** the petition to vacate, set aside or correct

21  his sentence.

22

23  IT IS SO ORDERED.

24     Dated:   **December 23, 2022**

UNITED STATES DISTRICT JUDGE

25

---

[3] The plea agreement reads, "If the defendant's conviction on any of the counts to which he is pleading is ever vacated at the defendant's request, or his sentence is ever reduced at his request, or if the defendant violates the Plea Agreement, he shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to perjury, false statements, and obstruction of justice." *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28